IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 18, 2010

**ROBERT J. MONTVILLE v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Hickman County**
**No. 08-5062C     Jeffrey S. Bivins, Judge**

_____

**No. M2010-00031-CCA-R3-PC - Filed February 15, 2011**

_____

The Petitioner, Robert J. Montville, appeals the Hickman County Circuit Court's denial of his petition for post-conviction relief from his convictions for simple assault and reckless driving and his resulting effective sentence of eleven months, twenty-nine days to be served as twenty-four hours in jail and the remainder on supervised probation. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Larry Joe Hinson, Jr., Hohenwald, Tennessee, for the appellant, Robert J. Montville.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

We glean the following facts from the record before us: On May 5, 2007, between 7:00 a.m. and 1:00 p.m., the Hickman County Rescue Squad conducted a fundraising roadblock at the intersection of Highway 46 and Church Road. Deputy Johnny Davis of the Hickman County Sheriff's Department was working at the roadblock. According to Deputy Davis' incident report, about 8:19 a.m., the Petitioner drove up to the roadblock; complained

about the fundraiser; and drove away, "squealing tires." Deputy Davis recorded the Petitioner's license tag number, obtained the Petitioner's personal information, and cited the Petitioner for reckless driving. When Deputy Davis returned to duty that night at 10:00 p.m., he went to the Petitioner's home to deliver the citation. The Petitioner became irate and told Deputy Davis, "I'll whip your ass you S.O.B." The Petitioner pulled off his watch, threw it onto a table, and advanced toward the deputy. The Petitioner's mother grabbed the Petitioner, but the Petitioner kept advancing toward Deputy Davis and called him a "Son of a Bitch." Deputy Davis arrested the Petitioner for simple assault.

On May 15, 2008, a Hickman County Circuit Court jury convicted the Petitioner of simple assault, a Class A misdemeanor, and reckless driving, a Class B misdemeanor. The trial court sentenced him to an effective sentence of eleven months, twenty-nine days to be served as twenty-four hours in jail and the remainder on supervised probation. The Petitioner did not appeal his convictions or sentences. On August 25, 2008, the petitioner filed a one-page petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel because counsel (1) filed a motion regarding the amount of time that elapsed between his committing the reckless driving offense and Deputy Davis' delivering the traffic citation to his home but cited no law in the motion; (2) did not subpoena two witnesses to question them at trial about Deputy Davis' work history and the validity of the rescue squad's fundraising permit; (3) did not use the permit in his defense; (4) allowed Deputy Davis to be in the courtroom during the trial; and (5) rambled during his closing argument. On a separately filed page, the Petitioner also alleged that he was entitled to post-conviction relief because the assistant district attorney general tried to extort money from him before trial by telling him the charges would be dropped if he would donate five hundred dollars to the rescue squad. On October 8, 2008, the post-conviction court dismissed the portion of the petition that alleged extortion but determined that the Petitioner's ineffective assistance of counsel claim stated a colorable claim for relief. The court appointed counsel and ordered the State to file an answer to the petition.

At the post-conviction evidentiary hearing, the Petitioner's trial attorney testified that he had been practicing law since 1985 and that at least sixty percent of his practice involved criminal law. In 2008, the Petitioner hired counsel to represent him in the simple assault and reckless driving case. They met at least twice before the preliminary hearing: once in counsel's office to discuss the facts of the case and one additional time. Counsel said he and the Petitioner also discussed the case "at length" on the day of the preliminary hearing. Counsel stated that the Petitioner did a lot of the "footwork" for the reckless driving charge but that there "wasn't a large scope of material available" for the assault charge.

Counsel testified that he talked with Deputy Davis at least one time before the preliminary hearing. Counsel did not normally allow his defendants to testify at preliminary

hearings, and Deputy Davis may have been the only witness who testified. However, counsel said his memory was "a little fuzzy on that." Deputy Davis' testimony about the events on the morning of May 5, 2007, was similar to what the Petitioner had told counsel. Deputy Davis' account of the events that resulted in the assault charge differed from the Petitioner's account.

Counsel testified that to prepare for trial, he looked at police reports, talked with the Petitioner, looked at materials such as sketches and photographs the Petitioner had provided to him, and visited the intersection where the fundraising roadblock was located. Counsel also had the information he had learned from the preliminary hearing. Counsel and the Petitioner did not discuss how much money the Petitioner could spend on his defense, but they discussed counsel's fee. When asked whether counsel talked with the Petitioner about hiring a court reporter for trial, counsel said, "Yes, I think I did, in fact." Counsel said his "recollection" was that hiring a court reporter was "financially prohibitive" for the Petitioner.

Counsel testified that Deputy Davis and the Petitioner testified at trial. An emergency medical technician (EMT), who had been present at the fundraising roadblock and was the first person to see the Petitioner there, also testified. Counsel stated that he was not surprised the State called the EMT to testify because the State needed witnesses to bolster Deputy Davis' version of events. Counsel acknowledged that on the morning of trial, he received the permit the rescue squad had allegedly obtained to conduct the event. Counsel explained that the Petitioner "felt . . . that this issue about the permit and the legality of that stop up there . . . would somehow undermine the credibility of the witnesses." However, counsel said he did not believe the permit was relevant and believed that challenging the permit would show "a certain amount of resentment and anger on his part that would have triggered the way he acted." Counsel stated that, in effect, the Petitioner wanted him to attack the rescue squad. However, counsel felt strongly that the strategy would backfire and refused to use it, which resulted in tensions between him and the Petitioner. Counsel explained that the Petitioner "saw this trial as some kind of bully pit for . . . the legality of the rescue unit's actions, and . . . that was the last place we wanted to go." He acknowledged that he did not cross-examine any witnesses about the permit.

Counsel testified that he talked with the Petitioner about subpoenaing the Hickman County Sheriff in order to question him at trial about Deputy Davis' work history. However, given that Deputy Davis was legitimately deputized and did not have any disciplinary actions pending against him, counsel did not think such testimony would be admissible. Regarding Deputy Davis' work history, counsel said he "couldn't a hundred percent say that there's not something in there that would reflect negatively on him." However, counsel said he was in court almost daily and had "a pretty good ear to the ground about what may be pending" against deputies. Counsel stated that although he did not address the deputy's work history

at trial, "there was a delay of a number of hours between the actual incident and when the warrant issued that indicated to me that perhaps [Deputy Davis] acted maybe out of anger." Counsel said that although he did not think Deputy Davis did anything legally improper, counsel thought "the way he did it" reflected animosity toward the Petitioner. Counsel said that he "explored that at length at trial" and that he believed the jury was sympathetic. Counsel acknowledged that he filed a pretrial motion regarding the timing of the traffic citation but said the motion was not well-founded. The State did not cross-examine counsel.

The Petitioner testified that after he was arrested and released from jail, he met with counsel. Counsel and the Petitioner discussed counsel's fee, and the Petitioner hired him. The Petitioner saw counsel on the morning of his scheduled preliminary hearing, which was postponed to a later date. Counsel told the Petitioner not to worry because the State did not have a case and the trial court would throw out the case after the preliminary hearing. The Petitioner testified at the hearing, but the case was not dismissed. The Petitioner met with counsel one time in counsel's office after the preliminary hearing and one additional time before trial. Counsel and the Petitioner never discussed how much the Petitioner could afford to spend on his defense or what it would cost. The Petitioner told counsel he would not accept a plea bargain.

The Petitioner testified that on the day of trial, he asked counsel if a court reporter would be present, and counsel said no because "we hadn't paid for it." The Petitioner had thought a court reporter would be present at all criminal trials. The Petitioner testified at trial. However, counsel never talked with the Petitioner about what questions he would ask or what line of questioning he would pursue. Counsel also never explained his trial strategy to the Petitioner. The Petitioner said that the rescue squad was not required to obtain a permit for the fundraiser and that he did not know before trial that a permit existed. He said that although the permit looked official, no permit number was written on it, and it was "a complete fabrication." Therefore, the Petitioner thought that the permit was strong impeachment evidence and that counsel should question the rescue squad's captain about it. The Petitioner did not believe counsel was prepared for trial because counsel had a notepad but did not have anything written on it and did not take notes during the witnesses' testimony. The Petitioner said he "did cuss [Deputy Davis] out for showing up at my house at eleven o'clock at night." However, he did not threaten to whip him and signed the traffic citation Deputy Davis delivered. The Petitioner said counsel should have impeached Deputy Davis' testimony with the fact that the Petitioner signed the citation because "[a]t what time did I stop and sign the citation and then go back to threatening to take him on?" The Petitioner said counsel based his entire closing argument on Patrick Henry and "rambled on for at least ten minutes." The Petitioner said that by the time counsel finished his closing argument, the Petitioner "wanted him to shut up."

-4-

On cross-examination, the Petitioner testified that he had conversations with counsel but that they did not discuss what was going to happen at trial. On redirect examination, the Petitioner testified that the "substance" of his conversations with counsel was that his case would not go to trial and that counsel told him, "You have nothing to worry about."

The post-conviction court denied the petition for post-conviction relief. According to the court's order, the court found counsel's testimony "credible on all issues in this case." Regarding the Petitioner's claim that counsel filed a motion but cited no law in the motion, the court noted that counsel explained why he filed the motion and that failing to cite to case law did not mean counsel's performance was deficient. The court concluded that the Petitioner failed to show he was prejudiced by counsel's motion. Next, the court addressed the Petitioner's claim that counsel rendered deficient performance because he failed to subpoena two witnesses, the Hickman County Sheriff in order to question him about Deputy Davis' work history and the Captain of the Hickman County Emergency Management Agency to question him about the fundraising permit. The court noted that the Petitioner failed to present any evidence at the hearing about the deputy's work history or show the history was relevant and that he failed to show how the captain's testimony would be relevant. Thus, the court concluded that the Petitioner had failed to demonstrate he was prejudiced by counsel's failure to subpoena the witnesses. Regarding the Petitioner's claim that counsel also could have cross-examined the captain about the permit, the court concluded that while it appeared the rescue squad did not have to obtain the permit to conduct the fundraiser, the Petitioner presented no proof that the permit was fake or issued fraudulently.

As to the Petitioner's claim that he received the ineffective assistance of counsel because counsel allowed Deputy Davis to remain in the courtroom during the trial, the post-conviction court held that the deputy's presence was permissible because he was the State's designated representative for trial. Finally, as to counsel's "rambling" closing argument, the court stated that "[t]his Court heard trial counsel's closing argument . . . and in no way found it to be deficient." Moreover, the court noted that the Petitioner had failed to identify any incorrect statements of law or fact made by counsel. Thus, the court concluded that the Petitioner was not entitled to relief.

## II. Analysis

The Petitioner contends that he received the ineffective assistance of counsel because counsel failed to keep him informed about developments in his case, including that the case was not going to be dismissed and that the Petitioner would have to go to trial, and failed to discuss trial strategy with him, preventing him from assisting with his defense. The Petitioner also argues that he received the ineffective assistance of counsel because counsel

came to trial unprepared and failed to inform him about the law regarding the presence of court reporters for misdemeanor cases. He contends that because a court reporter was not present, he was unable to preserve any potential errors for direct appeal. The State contends that the Petitioner has failed to show that he received the ineffective assistance of trial counsel. We agree with the State.

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S. C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

-6-

Initially, we note that none of the issues raised in the Petitioner's appellate brief were raised by the Petitioner in his petition for post-conviction relief.[1]   Therefore, the post-conviction court did not address whether the Petitioner received the ineffective assistance of counsel because counsel failed to inform him about developments in his case, failed to discuss trial strategy with him, came to trial unprepared, or failed to discuss having a court reporter at trial.  Typically, issues raised for the first time on appeal are waived.  State v. Adkisson, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994).  Nevertheless, we can conclude that none of those arguments warrants granting post-conviction relief.

Regarding the Petitioner's claim that counsel failed to inform him about developments in his case, namely that the case was not going to be dismissed, the Petitioner never questioned counsel at the post-conviction hearing about whether counsel told him the case would not go to trial.  In any event, even if counsel told the Petitioner the case would be dismissed, the Petitioner has failed to explain how that amounted to deficient performance or resulted in prejudice.  The Petitioner testified that he told counsel he would not accept a plea bargain, demonstrating that the Petitioner at least anticipated going to trial.  The Petitioner is not entitled to relief on this issue.

Regarding counsel's failure to discuss trial strategy with the Petitioner, counsel testified that the Petitioner wanted him to subpoena the Hickman County Sheriff to question him about Deputy Davis' work history and subpoena the Captain of the Hickman County Emergency Management Agency to question him about the rescue squad's fundraising permit. The Petitioner also testified at the hearing about his wanting counsel to subpoena and question those witnesses. Therefore, counsel and the Petitioner obviously discussed possible trial strategies in this case.  Counsel explained why he did not pursue those strategies, and this court will not second-guess counsel's reasoning unless it was based upon inadequate preparation. See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982).  As to the Petitioner's claim that counsel was unprepared for trial, counsel testified that he spoke with the Petitioner about the facts of the case, reviewed reports, looked at photographs, and went to the scene of the roadblock.  Counsel also had talked with Deputy Davis and had gained information from the preliminary hearing.  The fact that counsel did not have anything written on his notepad or failed to take notes during the witnesses' testimony does not show counsel rendered deficient

---

[1]We also note that the Petitioner's brief does not comply with Tennessee Rule of Appellate Procedure 27(a)(6).  Pursuant to the rule, it is the Petitioner's duty to include in his brief a statement of the facts relevant to the issues on appeal with appropriate record to references.  The statement of facts in the Petitioner's brief is composed of five sentences and contains almost no evidence presented at the post-conviction evidentiary hearing.

performance, and the Petitioner has failed to explain what more counsel should have done to prepare for trial or how he was prejudiced by counsel's being unprepared.

As to the Petitioner's claim that counsel should have talked with him about having a court reporter at trial, we note that "a court reporter [is] not provided at state expense for a misdemeanor unless a defendant [is] unable to afford one based upon indigency." State v. Nail, 963 S.W.2d 761, 764 (Tenn. Crim. App. 1997). The Petitioner was not declared indigent at the trial phase. Counsel testified that he talked with the Petitioner about hiring a court reporter and that the Petitioner could not afford one. The post-conviction court accredited counsel's testimony over that of the Petitioner. In any event, although the Petitioner now claims that not having a court reporter prevented him from a direct appeal of his case, he has failed to describe any errors at trial that would have resulted in a different outcome.

### III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the Petitioner is not entitled to post-conviction relief and affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE